[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12212
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cr-00036-WLS-TQL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES DONALD STOYLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(May 12, 2020)

Before WILLIAM PRYOR, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

James Stoyle appeals the substantive reasonableness of his below-guideline sentence.  We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 12, 2019, Stoyle pleaded guilty to one count of distributing over five grams of methamphetamine.  Stoyle did not enter into a plea agreement with the government, but at his plea hearing he agreed with the government's factual recitation that he sold 13.34 grams of methamphetamine to a confidential informant in exchange for $400.

The probation office prepared a presentence investigation report that recommended a guideline range of 188 to 235 months imprisonment.  The PSR stated that Stoyle was a career offender under U.S.S.G. § 4B1.1(a) based on two prior state convictions.  The first was a 2011 case in which Stoyle pleaded guilty to possessing methamphetamine with intent to distribute and possessing cough and cold pills with the intent to manufacture methamphetamine.  The second was a 2014 case in which Stoyle pleaded guilty to manufacturing methamphetamine and possessing pseudoephedrine with the intent to manufacture methamphetamine.  The PSR noted that Stoyle faced a statutory minimum of 60 months imprisonment and a statutory maximum of 480 months imprisonment.

2

Stoyle did not object to the PSR, but he filed a sentence memorandum asking for leniency. Stoyle outlined his troubled upbringing, reflecting on his family's poverty and history of drug use. Stoyle also explained that his state convictions "were essentially minor." He noted that, in the 2011 case, he "burned over 40% of his body" and "[n]o methamphetamine was produced." And he said that the 2014 case "involved a very small amount of methamphetamine found in a baggie and materials to manufacture methamphetamine." Stoyle also said that, in this case, he cooperated with law enforcement by sharing his supplier's contact information.

Stoyle asked the district court to sentence him to a term of imprisonment between 77 and 96 months, noting that such a sentence would "encompass[] both the seriousness of the offense[] but also take[] into account [his] life story, the amount of methamphetamine he actually sold, and the criminal history category of a career offender." He noted that if the district court were to sentence him at the bottom of the guideline range, he would be almost fifty years old when he's released from federal prison. Stoyle claimed that, at fifty years old, "he [would] likely not be employable, have little family left, have few ties in the community, and the world [would] have changed so dramatically [that] he [would] not cope."

The district court held a sentence hearing on May 23, 2019. The government agreed with Stoyle that his prior convictions "involved small amounts of methamphetamine" but said "that doesn't necessarily mean that their impact on the

community as a whole was small." The government noted that the 2011 case "involved an explosion in which four or five other people were put in danger" and the 2014 case involved "a rolling meth lab which [Stoyle] was operating and then crashed into another motorist." The government further noted that Stoyle was on parole at the time he sold meth in this case.

Stoyle reiterated much of what he said in his sentence memorandum, explaining that he was "a man who ha[d] been shaped by the circumstances of his childhood" and had been failed by "the system." He recognized that what he did was "serious" but repeated that "only small amounts of meth [were] found" and that he was making it for himself and his family. Stoyle stated that if the district court were to sentence him to 180 months in prison, it would be "much too long to do the types of things that can be done while in federal custody to give him a chance at life afterwards." Stoyle again asked the district court to sentence him to a term of imprisonment between 77 and 96 months.

The district court explained that it was "concerned . . . as it always [was] when there is addiction involved and . . . drugs that affect the community." The court was "genuinely sorry" for the circumstances of Stoyle's upbringing and had "no doubt" that the facts were as reflected in his sentence memorandum. The court noted that not everyone who suffers a terrible childhood is driven to commit crimes, but it

4

likewise explained that "[y]ou can't say if somebody pulled themselves up by their bootstrap everybody should have because not everyone can."

The district court was also "troubled" by Stoyle's prior convictions. The court agreed that there were not "any huge amounts" involved but stated that "it [was] clear there was some type of manufacture or group conduct." The court added that the facts of this case did not indicate that "there was any big-time dealing going on," but the court contrasted that with Stoyle's willingness to engage in the offense despite his maturity.

Ultimately, the district court sentenced Stoyle to a term of 120 months in prison followed by five years of supervised release. The court adopted the guideline range proposed in Stoyle's PSR but determined that a downward variance was appropriate due to the "extreme" circumstances of Stoyle's upbringing. In doing so, the court made clear that it had considered the sentencing factors listed in 18 U.S.C. § 3553(a) and made "an individualized assessment based on the facts presented." The court explained that the sentence took into account Stoyle's "prior conduct" and "the reality of [his] situation" and afforded Stoyle an "opportunity to get treatment and education."

The district court asked the parties whether they had any objections, and Stoyle noted only that he objected to the substantive reasonableness of the sentence.

5

The court overruled Stoyle's objection, explaining that it had "extensively stated" the basis of the sentence and why it was appropriate.  Stoyle timely appealed.

## STANDARD OF REVIEW

"We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard."  United States v. Fox, 926 F.3d 1275, 1278 (11th Cir. 2019).  The district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, adequately deter criminal conduct, and protect the public from the defendant's future criminal conduct.  18 U.S.C. § 3553(a).  "The weight given to any specific § 3553(a) factor is left to the district court's discretion, and this Court does not substitute its judgment for that of the District Court's in weighing the relevant factors."  Fox, 926 F.3d at 1282 (citation omitted).  "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." Id. (citation omitted).  The party challenging a sentence has the burden to show that "the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts."  See id.  (citation omitted).

## DISCUSSION

Stoyle argues that his sentence is substantively unreasonable because "the district court did not properly weigh the nature and circumstances of [his] offense when it imposed [his] sentence." Stoyle notes that his sentence was enhanced because he was deemed a career offender under U.S.S.G. § 4B1.1(a) and claims that "[t]he intent of § 4B1.1(a) is to punish repeat violent criminals and repeat serious drug dealers and drug traffickers." Stoyle argues that he does not meet the objective of § 4B1.1(a) because he "is an addict[,] not a drug trafficker."

We conclude that the district court did not abuse its discretion and that Stoyle's sentence was substantively reasonable. The district court's comments at the sentence hearing clearly reflected that it fairly considered Stoyle's background and the fact that Stoyle was an addict, not a "big-time" drug trafficker. The court's consideration of the § 3553(a) factors, including the nature and circumstances of the offense conduct, was also reflected in the 120-month sentence—a downward variance of 68 months. Furthermore, Stoyle's sentence is well below the statutory maximum, which is another indicator of its reasonableness. See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008). In short, Stoyle has failed to meet his burden to show that his sentence was substantively unreasonable.

**AFFIRMED.**

7